# CHATTEL MORTGAGE
**(Equipment Financing Agreement)**

CREDITOR: Comquip Capital & Leasing, Inc.
21 Bluff Point Road
Northport, New York 11768
(631) 266-5550

OBLIGOR:

Beacon Press Corp.
Name

132 Meadow St.
Address

| Warwick | RI | 02886 |
|---|---|---|
| City | State | Zip |

SELLER:

SEE PAY PROCEEDS LETTER
Name

Address

City State Zip

| QUANTITY | DESCRIPTION OF EQUIPMENT: MODEL NO., SERIAL NO. OR OTHER IDENTIFICATION | PRICE |
|---|---|---|

One New Raghbeer Fast 300 Eight Unit Web Offset Press Consisting of 4 Units + ½ Folder + Four High Tower + Two High Reel Stand
Unit One SN: 0460090 with Rollstand SN:0444221, Unit Two SN: 0460091 with Rollstand SN:0444222,
Unit Three SN: 0460092 with Rollstand SN:0444220, Unit Four SN: 0460093 with Rollstand SN:0444219
Folder SN: 0430068
Four High Tower SN: bottom 0460094, second 0460095, third 0460096, top 0460097

## TERMS AND CONDITIONS OF AGREEMENT

A. MONTHLY PAYMENT: $ SEE PAYMENT SCHEDULE

B. TERM OF AGREEMENT: 84 months

C. COMMENCEMENT DATE: April 1, 2004

D. ADVANCE PAYMENTS: $ 3,815.00

E. ADVANCE PAYMENTS SHALL BE APPLIED TO : FIRST 1 & LAST ______ MONTHS

PAYMENT SCHEDULE

3 Consecutive Payments @ $ 3,815.00
3 Consecutive Payments @ $ 6,500.00
78 Consecutive Payments @ $ 9,790.00

AMOUNT OF ADVANCE: **$ 610,500.00**

ADDITIONAL PROVISIONS (IF ANY) AND/OR LOCATION OF EQUIPMENT OTHER THAN OBLIGOR'S ADDRESS ABOVE:

1. The Obligor named above ("Obligor") hereby grants to the creditor named above ("Creditor") a first priority security interest in the personal property described above and in any schedule signed by the parties and made a part hereof, including all proceeds and products thereof, all proceeds of insurance thereon, all substitutions therefor and all additions thereto (said property, proceeds, products substitutions and additions being herein called "Equipment"), which Equipment Obligor confirms will be used solely for commercial or business purposes (and not for consumer, personal, family or household purposes), as security for the repayment by Obligor to Creditor of the amounts specified in paragraph 4 hereof (and including any amounts specified in any separate promissory note or instrument which may be executed by Obligor specifically relating to this Agreement) and the performance by Obligor of all of its other obli gations pursuant to the terms and conditions of this Agreement or otherwise to Creditor or Creditor's Assignee.

2. Creditor agrees to advance to or on behalf of Obligor the above-stated Amount of Advance (herein called the "Advance") which Obligor agrees may be paid directly by Creditor to Seller in satisfaction of the total purchase price of the Equipment.

3. The term of this Agreement (the "Entire Term") shall be the number of months stated in B above, commencing on the date stated in C above. Obligor authorizes Creditor to insert such commencement date herein, provided that such date shall not be earlier than the date of delivery to Obligor of all or a substantial part of the Equipment.

4. Obligor's total payments for the Entire Term of this Agreement is equal to the monthly payment stated in A above, multiplied by the number of months stated in B above. Obligor agrees to pay the total payment in monthly installments, in advance, each in the amount stated in A above, commencing on the date stated in C above and continuing on the same day of each month thereafter. The "Advance Payments" stated in D above shall be paid by Obligor prior to Creditor's acceptance of this Agreement, and shall be applied to the periodic installments stated in E above. In the event the term of this Agreement does not commence for any reason whatsoever, the Advance Payments stated in D above shall be retained by Creditor not as a penalty but as liquidated damages to cover Creditor's administrative expenses in processing the application for this Agreement. Payment of all periodic installments and other amounts payable hereunder shall be made to Creditor at its above stated address, or as it shall otherwise designate in writing. **THIS AGREEMENT IS IRREVOCABLE AND MAY NOT BY CANCELED, TERMINATED OR REVOKED BY OBLIGOR DURING THE TERM HEREOF FOR ANY REASON WHATSOEVER.**

5. **OBLIGOR REPRESENTS THAT IT HAS SELECTED THE EQUIPMENT, AND OBLIGOR AGREES THAT CREDITOR HAS NOT MADE AND MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, DIRECTLY OR INDIRECTLY, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, TITLE TO OR THE SUITABILITY OF THE EQUIPMENT, ITS DURABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE, ITS MERCHANTABILITY, ITS CONDITION, ITS CAPACITY, ITS OPERATION, ITS PERFORMANCE, ITS DESIGN, ITS MATERIALS, ITS WORKMANSHIP AND/OR ITS QUALITY. CREDITOR AND CREDITOR'S ASSIGNEE SHALL NOT BE LIABLE TO OBLIGOR OR ANY THIRD PARTY FOR ANY LOSS DAMAGE, INJURY OR EXPENSE OF ANY KIND OR NATURE CAUSED DIRECTLY OR INDIRECTLY BY ANY OF THE EQUIPMENT OR THEIR USE OR MAINTENANCE THEREOF OR ANY DEFECT THEREIN, THE FAILURE OF OPERATION THEROF, OR ANY REPAIR, SERVICE OR ADJUSTMENT THERETO, OR BY ANY DELAY OR FAILURE TO PROVIDE ANY THEREOF OR BY ANY INTERRUPTION OR SERVICE OR LOSS OF USE THEREOF OR FOR ANY LOSS OF BUSINESS OR DAMAGE WHATSOEVER AND HOWSOEVER CAUSED, INCLUDING (WITHOUT LIMITATION) ANY LOSS OF ANTICIPATORY PROFITS OR ANY OTHER INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES, NOR SHALL CREDITOR BE LIABLE FOR ANY DAMAGES WHICH MAY BE ASSESSED AGAINST OBLIGOR IN ANY ACTION FOR INFRINGEMENT OF ANY UNITED STATES PATENT, TRADEMARK OR COPYRIGHT. CREDITOR MAKES NO WARRANTY AS TO THE TREATMENT OF THIS AGREEMENT FOR TAX OR ACCOUNTING PURPOSES, OR AS TO THE COMPLIANCE OF THE EQUIPMENT WITH APPLICABLE GOVERNMENT REGULATIONS OR REQUIREMENTS, WHICH SHALL BE THE SOLE RESPONSIBILITY OF THE ABOVE-NAMED SELLER AND/OR MANUFACTURER OF THE EQUIPMENT. NO REPRESENTATION OR WARRANTY AS TO THE EQUIPMENT OR ANY OTHER MATTER BY SELLER SHALL BE BINDING ON CREDITOR NOR SHALL THE BREACH OF SUCH RELIEVE OBLIGOR OF, OR IN ANY WAY AFFECT, ANY OF OBLIGOR'S OBLIGATIONS TO CREDITOR OR CREDITOR'S ASSIGNEE AS SET FORTH HEREIN.** Obligor agrees to look solely to the manufacturer, the Seller named above or the carrier of the Equipment (which are solely responsible for supplying Obligor with all literature and manuals respecting the Equipment) for any claim arising from any defect, breach of warranty, failure or delay in delivery, misdelivery, installation or inability to use the Equipment for any reason whatsoever and Obligor's obligations to Creditor hereunder shall not in any manner be affected thereby, including (without limitations) Obligor's obligations to pay Creditor all periodic installments and other amounts payable under this Agreement.

6. Obligor shall accept the Equipment upon its delivery and authorizes Creditor to insert herein the serial numbers and any additional description of the items of Equipment so delivered. If Obligor wrongfully refuses delivery of any item of Equipment for any reason whatsoever, then and in that event, Obligor agrees to indemnify and hold Creditor harmless from and against, and agrees to protect and (at Creditor's option) to defend Creditor at Obligor's sole expense against (with counsel acceptable to Creditor), any claim or liability and damage by Seller with reference to such item of Equipment. Upon such payment, this Agreement shall terminate as to such item of Equipment only, and the periodic installment hereunder shall be proportionately adjusted.

7. Obligor shall keep the Equipment within the United States at the above-stated "Location of Equipment" or, if none is specified, at Obligor's above-stated address within the United States, and Obligor shall not remove any of the Equipment therefrom for more than thirty (30) days without Creditor's prior written consent.

8. Obligor shall use the Equipment in a careful manner and shall at all times, at its sole expense, keep the Equipment in good operating condition, repair and appearance and comply with all laws, ordinances, regulations or requirements of any governmental authority, official, board or department relating to its installation, possession, use or maintenance. Obligor shall not make any alterations, additions, or improvements to the Equipment which are not readily removable without causing damage to or reducing the value of the Equipment. Obligor agrees to cause the Equipment to be maintained by the above-named Seller pursuant to Seller's standard preventive maintenance contract or by a comparable maintenance contract issued by a maintenance provider acceptable to Creditor.

9. Upon Creditor's request, Obligor shall affix and keep in a prominent place on each item of Equipment such labels, plates and/or other markings indicating that the Equipment is financed by Creditor as Creditor shall specify. Creditor shall have the right during normal hours, upon reasonable prior notice to Obligor, to enter upon the premises where the Equipment is located in order to inspect, observe or remove the Equipment, or to otherwise protect Creditor's interest.

10. The Equipment shall be and remain personal property notwithstanding the manner in which it may be attached or affixed to realty. Obligor represents, warrants and covenants that, unless Obligor owns the premises in which the Equipment is to be located and such premises are not subject to any mortgage, Obligor shall provide Creditor, within ten (10) days following the execution by Obligor of this Agreement, with a waiver from each landlord and/or mortgagee of the premises in which the Equipment is to be located of any rights which such landlord and/or mortgagee may have in respect of any of the Equipment (including, but not limited to, claims against the Equipment by reason of accession or distraint, or that the Equipment constitutes a fixture affixed to real property) and to procure for Creditor, in form acceptable to Creditor, such documents with respect to such waiver as Creditor may reasonably request.

11. In addition, to the extent permitted by applicable law, Obligor also hereby waives any rights now or hereafter conferred by statute or otherwise which may require Creditor to sell, lease or otherwise use any Equipment in mitigation of Creditor's damages or which may otherwise limit or modify any of Creditor's rights or remedies.

12. Obligor shall bear the entire risk of loss, theft, destruction of or damage to the Equipment or any part thereof from any cause whatsoever during the term of this Agreement and shall not be relieved of its liabilities under paragraph 4 hereof or any other obligation hereunder because of any such occurrence. In the event of damage to any item of Equipment, Obligor, at its sole expense and at the option of Creditor, shall immediately place the same in good condition and repair. If Creditor determines that any item of Equipment is lost, stolen or destroyed or damaged beyond repair, Obligor, at its sole expense and at the option of Creditor, shall (a) replace the same with like equipment in good condition and repair, or (b) pay Creditor in cash (in addition to any other amount due hereunder) the unpaid balance of the total periodic installments for the unexpired term hereof attributable to such item of Equipment. Upon Creditor's receipt of such payment, Creditor's security interest in such item of Equipment shall cease.

13. Obligor shall, at its expense, keep the Equipment fully insured in favor of Creditor against loss, fire, theft, damage or destruction from any cause whatsoever in an amount not less than the greater of (a) the total periodic installments hereunder, or (b) the full replacement cost of the Equipment without consideration for depreciation. Obligor shall also provide such additional insurance against injury, loss or damage to persons or property arising out of the use or operation of the Equipment as is customarily maintained by the owners of like property, with companies satisfactory to Creditor. Each policy shall provide that, as to the interest or coverage of Creditor or Creditor's assignee, the insurance afforded thereby shall not be suspended, forfeited, or in any manner prejudiced by any default or by any breach of warranty condition, or covenant on the part of Obligor. Creditor, at its option, may apply any proceeds of such insurance to replace or repair such Equipment and/or to Obligor's obligations hereunder. If Obligor shall fail to provide any such insurance or, within ten (10) days after Creditor's request therefor, shall fail to deliver the policies or certificates thereof to Creditor, the Creditor, at its option, shall have the right to procure such insurance and to add the full cost thereof to the payment next becoming due, which Obligor agrees to pay. The amount of such insurance shall be sufficient so that neither Creditor nor Obligor will be considered a co-insurer. Obligor also shall carry public liability insurance, both personal injury and property damage covering the Equipment. All such insurance shall be in form, issued by such insurance companies and be in such amounts as shall be satisfactory to Creditor, and shall provide that losses, if any, shall be payable to Creditor and Creditor's assignee as "loss payee", and all such liability insurance shall include Creditor and Creditor's assignee as an "additional insured." Obligor shall pay the premiums for such insurance and deliver to Creditor satisfactory evidence of the insurance coverage required hereunder. Each insurer shall agree, by endorsement upon the policy or policies issued by it or by independent instrument furnished to Creditor, that it will give Creditor at least ten (10) days prior written notice of the effective date of any alteration or cancellation of such policy, and that Creditor's coverage under such policy shall not be affected by any default, misrepresentation or other breach by Creditor or Obligor under this Agreement or such policy. Obligor hereby irrevocably appoints Creditor as Obligors' attorney-in-fact to make claim for, receive payments of and execute and endorse all documents, checks or drafts received in payment for loss or damage under any such insurance policy. In any event, Obligor shall be liable for

any loss, damage, expense or costs suffered or incurred by Creditor relating to or in any manner pertaining to this Agreement, the Equipment or the use or operation of the Equipment.

14. Obligor covenants and agrees at all times to keep the Equipment free and clear of all levies, liens and encumbrances, and to pay all charges, taxes and fees that may now or hereafter be imposed upon the ownership, sale, purchase, possession or use of the Equipment (except taxes on or measured by Creditor's income) and shall give Creditor immediate written notice of any of the foregoing and hereby indemnifies Creditor against any loss caused thereby. If any of same shall remain unpaid when due, Creditor may pay same and add such payment to the payment next becoming due. Obligor shall execute and deliver to Creditor upon Creditor's request such further instruments, financing statements and documents containing such other assurances as Creditor deems necessary or advisable for the confirmation or perfection of Creditor's rights hereunder or to otherwise effectuate the intent of this Agreement.

15. Obligor shall and does hereby indemnify and save Creditor, its officers, employees, agents, servants, successors and assigns, harmless from any and all liabilities (including, without limitation, negligence, tort and strict liability), damages, expenses, claims, actions, proceedings, judgments, settlements, losses, liens and obligations (each, an "Indemnified Claim"), including (without limitation) counsel fees and costs, arising out of the ordering, purchase, delivery, rejection, non-delivery, ownership, selection, possession, financing, operation (regardless of where, how and by whom operated), control, use, condition (including but not limited to latent and other defects, whether or not discoverable by Obligor), maintenance, delivery, transportation, storage repair, return or other disposition of the Equipment, any claims arising under federal, state or local environmental protection and hazardous substance clean up laws and regulations and any claims of patent, trademark or copyright infringement or, in the event that Obligor shall be in default hereunder, arising out of the condition of any item of Equipment sold or disposed of after use by Obligor, including (without limitation) claims for injury to or death of persons and for damage to property. The indemnities and obligations herein provided shall continue in full force and effect notwithstanding the expiration, termination or cancellation of this Agreement for any reason whatsoever and irrespective of whether Creditor ever accepts this Agreement. Obligor shall give Creditor prompt written notice of any Indemnified Claim and, at Creditor's sole option, shall defend Creditor against any Indemnified Claim at Obligor's sole expense with counsel selected by Creditor. Obligor is an independent contractor and nothing contained herein shall authorize Obligor or any other person to operate any item of Equipment so as to incur any liability or obligation for or on behalf of Creditor.

16. OBLIGOR SHALL NOT ASSIGN, PLEDGE, MORTGAGE OR OTHERWISE TRANSFER OR ENCUMBER ANY OF ITS RIGHTS UNDER THIS AGREEMENT OR IN THE EQUIPMENT OR ANY PART THEREOF, NOR SUBLET ANY PART THEREOF, NOR PERMIT ITS USE BY ANYONE OTHER THAN OBLIGOR AND ITS REGULAR EMPLOYEES, WITHOUT CREDITOR'S PRIOR WRITTEN CONSENT. ANY SUCH PURPORTED TRANSFER, ASSIGNMENT OR OTHER ACTION WITHOUT CREDITOR'S WRITTEN CONSENT SHALL BE VOID. Creditor may, without notice, transfer or assign this Agreement or any interest herein and may mortgage, pledge, encumber or transfer any of its right or interest in and to this Agreement and/or the Equipment or any part thereof and, without limitation, each assignee, transferee and mortgagee shall have the right to further transfer or assign its interest. Each such assignee, transferee, mortgagee and pledgee shall have all of the rights (but none of the obligations) of Creditor under this Agreement, and Obligor hereby acknowledges notice of Creditor's intended assignment of Creditor's interest in this Agreement and, upon such assignment, Obligor agrees not to assert against any of such transferee, assignee, mortgagee or pledgee any defense, claim, counterclaim or set-off that Obligor may have against Creditor, whether arising under this Agreement, transaction or otherwise. Any assignee of Creditor's rights under this Agreement shall be considered a third party beneficiary of all of Obligor's representations, warranties and obligations hereunder to Creditor. Obligor agrees that after receipt by Obligor of written notice of an assignment from Creditor or from Creditor's assignee, all periodic installments and other amounts which are then and thereafter due under this Agreement shall be paid unconditionally to such assignee at the place of payment designated in such notice. Obligor acknowledges that any assignment of Creditor's interest would neither materially change the Obligor's obligations hereunder nor materially increase the burden of risk imposed on the Obligor under this Agreement. Obligor further acknowledges that an assignment by the Creditor of its interest hereunder will be permitted even if the assignment would deem to materially affect the Obligor's interest.

17. As used in this Agreement, the term "Event of Default" shall mean any one or more of the following: (a) the failure by Obligor to make any payment when due hereunder or the failure by a Debtor (as hereinafter defined) to pay when due any of the Liabilities (as hereinafter defined); (b) the failure by a Debtor to observe or perform (i) any other agreement or obligation to be observed or performed hereunder or under any agreement, document or instrument delivered to Creditor by or on behalf of any Debtor or otherwise relating to any of the Liabilities (collectively, the "Other Documents"), or (ii) any other obligation of a Debtor to Creditor; (c) any representation or warranty manned by or on behalf of any Debtor in this Agreement or in any of the Other Documents shall at any time prove to have been incorrect or untrue when made; (d) the making by a Debtor of any misrepresentation to Creditor or the failure on the part of a Debtor to

disclose to Creditor any material fact in connection with this Agreement or otherwise, either contemporaneously herewith or at any time prior or subsequent to the execution hereof; (e) the breach by a Debtor of any warranty contained herein or in any of the Other Documents, including, without limitation, Obligor's failure to obtain or maintain any insurance required by Creditor hereunder; (f) any default in the payment of any indebtedness owed to any individual or entity other than Creditor, or any default in the performance or observance of the terms of any agreement, document or instrument pursuant to which such indebtedness was created, secured or guaranteed, the effect of which default is to cause or permit the holder of any such indebtedness to cause the same to be due prior to its stated maturity (whether or not such default is waived by the holder thereof); (g) the failure of a Debtor to pay, withhold, collect or remit when asserted or due any tax, assessment or other sum payable with respect to the Equipment or any security for any of the Liabilities (including, without limitation, any premium on any insurance policy with respect to any of the Equipment or any security for any of the Liabilities, or any insurance policy assigned to Creditor as security for any of the Liabilities), or the making of any tax assessment against any Debtor by the United States or any state or local government; (h) the entry of a judgment against a Debtor or any attachment, levy or execution against any property of a Debtor, or the condemnation or seizure of any part of any property of a Debtor by any governmental authority or court at the insistence of such governmental authority; (i) the death of a Debtor, if an individual, or the death of any individual member of a Debtor, if a partnership or joint venture; (j) the change in control, management, ownership or operations of a Debtor, or the suspension of the usual business of a Debtor, or the dissolution, liquidation or other termination of existence of a Debtor, or the adoption of any resolution for the dissolution, liquidation or other termination of existence of a Debtor, or the sale of material assets of an Obligor; (k) the failure of a Debtor (or any admission in writing by a Debtor of its inability) to generally pay its debts as they become due or the insolvency or business failure of a Debtor; (l) the filing of an application for appointment of trustee, custodian or receiver for a Debtor or of any part of a Debtor's property, or an assignment for the benefit of creditors by a Debtor, or the making or sending of notice of any intended bulk transfer by a Debtor; (m) the filing of a petition in bankruptcy by or against a Debtor, or the commencement by or against a Debtor of any proceeding under any bankruptcy or insolvency law or statute, or any law or statute, relating to the relief of debtors or arrangement of debt, readjustment of indebtedness, reorganization, receivership or composition, or the extension of indebtedness; or (n) such a change in the condition or affairs (financial or otherwise) of a Debtor as shall, in the sole opinion of Creditor increase Creditor's risk with respect to this Agreement, the Equipment or any of the Liabilities or any security therefor. Upon the occurrence of an Event of Default, then, at Creditor's option, and at any time, the entire unpaid total periodic installments for the balance of the Entire Term (discounted to its present value at a discount rate of 6% as of the date of default) hereof shall be at once due and payable and/or Creditor may, without demand or legal process, terminate this Agreement and enter upon the premises where the Equipment is located, take possession of and remove same, and exercise any one or more of the following rights and remedies, without liability to Obligor therefor and without affecting Obligor's obligations hereunder: (i) sell, lease, or otherwise dispose of the Equipment or any part thereof at one or more public or private sales, agreements or other dispositions, at wholesale or retail, for such consideration, on such terms, for cash or on credit, as Creditor may deem advisable, on at least ten (10) days prior notice to Obligor of any public sale or of the time after which private sale, agreement or other disposition may be made (which notice Obligor acknowledges is reasonable); and/or (ii) retain the Equipment or any part thereof, crediting Obligor with the then reasonable rental value thereof for the balance of the Entire Term of this Agreement, and/or (iii) require Obligor to assemble all Equipment at Obligor's sole expense, for Creditor's benefit, at a place reasonably designated by Creditor: and/or (iv) pursue any other remedy granted by any existing or future document executed by Obligor or by law. Obligor agrees to pay all Creditor's expenses, including (but not limited to) the costs of repossessing, storing, repairing and preparing Equipment for sale or agreement, commissions payable in connection with any such sale or agreement, and reasonable attorney's fees if an attorney shall be consulted. The net proceeds realized from any such sale, agreement or other disposition or the exercise of any other remedy, and all expenses (which amount shall by retained by Creditor), shall be applied toward payment of the discounted unpaid periodic installment payments hereunder through the end of the Entire Term of the Agreement, any other amounts due hereunder, with Obligor to remain liable for any deficiency. Any amount due Creditor under this paragraph 17 shall be deemed liquidated damages for the breach hereof and not a penalty. All rights and remedies of Creditor shall be cumulative and not alternative and are in addition to any other remedies provided by law. Creditor's failure to exercise or delay in exercising any right or remedy shall not be construed as a waiver thereof, nor shall a waiver on one occasion be construed to bar the exercise of any right or remedy on a future occasion.

For purposes of this Agreement, (a) the term "Debtor" shall mean Obligor and any guarantor, pledgor or hypothecator, and any other party liable for any of the Liabilities of Obligor in addition to Obligor and (b) the term "Liabilities" shall mean all liabilities and obligations of any kind of all Debtors (or any partnership, joint venture or other group of which a Debtor is a member) to Creditor whether (i) for the account of Creditor, or as agent for others, (ii) acquired directly or indirectly by Creditor from Obligor or otherwise, (iii) absolute or contingent, joint or several, secured or unsecured, liquidated or unliquidated, due or not due, contractual or tortuous or now existing or hereinafter arising or (iv) incurred by a Debtor as principal, surety, endorser, guarantor or otherwise, and including without limitation all expenses and attorneys' fees, incurred by Creditor in connection with any such liabilities or obligations or any security therefor. For purposes of this

paragraph of this Agreement, the term "Equipment" shall mean all personal property whether owned or leased by a Debtor in which Creditor has an interest of any nature.

18. Whenever any periodic installment or other amount payable to Creditor by Obligor hereunder is not paid within ten (10) days of such payments due date, Obligor agrees to pay Creditor, on demand, as liquidated damages and not as a penalty; (a) with respect to payments, an administrative fee equal to five cents ($.05) for each one dollar ($1.00) of such delayed periodic payment, or the maximum amount permitted under applicable law, whichever is less, and (b) with respect to periodic payments overdue for more than thirty (30) days and all other amounts payable to Creditor by Obligor hereunder (including accelerated amounts due if Obligor is in default), a late charge calculated at the rate of 18% per annum on such overdue amount, or the maximum amount permitted under applicable law, whichever, is less, from the date such payment is due until the date such payment is made in full to Creditor. Such amount(s) shall be payable in addition to all amounts payable by Obligor as a result of exercise of any of the remedies herein provided. Obligor agrees to also reimburse Creditor for any expenses (including Creditor's attorneys' fees and costs) arising out of or caused by enforcement of this Agreement.

19. Obligor agrees that this Agreement is irrevocable for the Entire Term, that Obligor's obligations under this Agreement are absolute and unconditional and shall continue without abatement and regardless of any disability of Obligor to use the Equipment or any part thereof because of any reason including, but not limited to war, act of God, governmental regulations, strike, loss, damage, destruction, obsolescence, failure of or delay in delivery, failure of the Equipment to operate properly, termination by operation of law or any other cause. Obligor further agrees that it shall have no right to prepay its obligations hereunder, in whole or in part, and hereby unconditionally waives any right of prepayment it may have under applicable law. Obligor warrants that the application, statements and credit or financial information submitted by it to Creditor are true and correct and made to induce Creditor to enter into this Agreement and to finance Obligor's purchase of the Equipment from Seller. Obligor agrees to provide to Creditor audited annual financial statements and such other interim financial statements as Creditor may request. Obligor warrants that this Agreement has been duly authorized , executed and delivered by Obligor, and constitutes the legal, valid and binding obligation of Obligor, enforceable in accordance with its terms, and that no provision of this Agreement is inconsistent with Obligor's charter, by-laws, or any loan or credit agreement or other instrument to which Obligor is a party or by which Obligor or its property may be bound or affected or conflict with any applicable law, rule or regulation, and no claim, action or suit is pending or has been threatened that would adversely affect Obligor's ability to enter into or perform its obligations under this Agreement. Obligor shall not change its name or its address without providing Creditor with at least thirty (30) days prior written notice thereof.

20. Obligor agrees that upon expiration of this Agreement it shall pay promptly all costs, expenses and obligations of every kind and nature relating to the Equipment which may arise or become due during the term of this Agreement, whether or not specifically mentioned herein. No periodic installment or other sums payable by Obligor pursuant to this Agreement shall be subject to set-off, deduction, counterclaim, abatement, recoupment, or reduction, nor shall this Agreement terminate, nor shall Obligor be entitled to any credit against such periodic installment or other sums for any reason whatsoever, including, but not in any way limited to, any damage to or destruction of the Equipment or any item thereof, any limitation, restriction, deprivation or prevention of, or any interference with Obligor's use of the Equipment or any item thereof, whether the sale shall be lawful or unlawful, any dispossession of Obligor from the Equipment or any item thereof by title paramount or otherwise, the requisition or taking by statute or by exercise of the power of eminent domain or other governmental authority or otherwise, or by injunction or by any private person, of the Equipment or any item thereof, the prohibition of Obligor's business in whole or in part, whether pursuant to law or otherwise or any reason whether similar or dissimilar to the foregoing.

21. OBLIGOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS ARISING DIRECTLY OR INDIRECTLY FROM OR IN CONNECTION WITH THIS AGREEMENT SHALL BE LITIGATED ONLY IN THE STATE AND COUNTY OF CREDITOR'S PRINCIPAL PLACE OF BUSINESS OR SUCH OTHER FORUM AS CREDITOR SHALL ELECT. Obligor consents to the jurisdiction and venue of the foregoing courts and consents that any process or notice of motion or other application to either of such courts or a judge thereof may be served inside or outside the state of Creditor's principal place of business by registered or certified mail, return receipt requested, directed to Obligor at its address set forth in this Agreement (and service so made shall be deemed complete five (5) days after the same has been posted as aforesaid) or by the personal service, or in such other manner as may be permissible under the rules of such courts. Obligor appoints each and every officer of Creditor as agent for the purpose of accepting service off any process within the state of Creditor's principal place of business, subject only to the condition that the officer promptly mail a copy of that process to Obligor at its address for notices hereunder.

EACH OF THE PARTIES HEREBY UNCONDITIONALLY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS AGREEMENT, ANY RELATED DOCUMENTS, ANY DEALINGS BETWEEN OBLIGOR AND CREDITOR RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN OBLIGOR AND CREDITOR. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

23. Any notice to a party hereunder shall be deemed given when mailed to said party by certified mail, return receipt requested at its address set forth herein or such other address as either may designate for itself in such notice to the other. Whenever the sense of this Agreement requires, words in the singular shall be deemed to include the plural and words in the plural shall be deemed to include the singular. If more than one Obligor is named herein the liability of each shall be joint and several. This Agreement (along with any separate promissory note or instrument executed by Obligor relating to this Agreement) constitutes the entire mutual understanding of the parties regarding the within subject matter and may not be modified except in writing, signed by the party against whom such modification is asserted. Upon the request of Creditor, Obligor shall at any time and from time to time after the execution and delivery of the Agreement, execute and deliver such further documents and do such further acts as Creditor may reasonably request in order fully to effect the purposes of this Agreement, and any assignment hereof. Obligor hereby authorizes Creditor, at its option and as contemplated by Section 9-408 of the UCC or otherwise, to file financing statements covering the Equipment signed only by Creditor on a reproduction of this Agreement, and agrees to pay Creditor the actual fee for such filing, recording or stamp fees or taxes arising from the filing or recording of any such instrument or statement. IN THE EVENT THE INTEREST RATE CHARGED UNDER THIS AGREEMENT EXCEEDS THE MAXIMUM RATE OF INTEREST ALLOWED BY APPLICABLE LAW, THEN THE EFFECTIVE RATE OF INTEREST HEREUNDER SHALL BE AUTOMATICALLY REDUCED TO THE MAXIMUM LAWFUL RATE ALLOWABLE UNDER THE APPLICABLE USURY LAWS.

24. THIS AGREEMENT SHALL BE CONSTRUED UNDER THE LAWS OF THE STATE OF CREDITOR'S PRINCIPAL PLACE OF BUSINESS, WITHOUT REGARD TO PRINCIPLES OF CONFLICT OF LAW OR CHOICE OF LAW. This Agreement shall not become effective until accepted by Creditor at its above-described office, and upon such acceptance shall, subject to paragraph 16 hereof, inure to and bind the parties, their successors, legal representatives and assigns. No provision hereof that may be construed as unenforceable shall in any way invalidate any other provision hereof, all of which shall remain in full force and effect. All representations, warranties, indemnities and agreements of Obligor contained in this Agreement shall survive and continue in full force and effect notwithstanding termination or expiration of this Agreement.

---

No agent or employee of Seller is authorized to bind Creditor to this Agreement, to alter or waive any term or condition hereof, or to add any provision hereto, notwithstanding any compensation or benefit that may be given by Creditor to Seller or any agent or employee of Seller. **THE UNDERSIGNED AGREE TO ALL TERMS AND CONDITIONS SET FORTH ABOVE AND IN WITNESS THEREOF HEREBY EXECUTE THIS AGREEMENT.**

**CREDITOR:** Comquip Capital & Leasing, Inc.

By: [signature]

Accepted at its office listed above: 3/22/04
Date

**OBLIGOR:** Beacon Press Corp.

The undersigned warrants that he is a duly authorized corporate officer, partner or proprietor of the above named Obligor.

By: [signature]

Title: [signature]