**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ALL POINTS CAPITAL CORP.** | : | |
| | : | |
| **v.** | : | **C.A. No. 2005-305-ML** |
| | : | |
| **BEACON PRESS CORP.,** | : | |
| **and ANTHONY RITACCO,** | : | |

**DEFENDANTS' MOTION TO AMEND CONSENT JUDGMENT AND FOR ENTRY OF ORDER THAT MODIFIED JUDGMENT HAS BEEN SATISFIED**

Now comes the Defendant Anthony Ritacco, both individually and as President of Beacon Press Corp., and pursuant to Fed.R.Civ.P. 60(b) hereby requests this Honorable Court to Amend the Consent Judgment entered by the Court on December 2, 2005. As reason therefor, Defendants state that a subsequent agreement between the parties effectively modified the terms of the Consent Judgment and that Defendants have satisfied the terms of the subsequent agreement in full.

Defendants request this Honorable Court to recognize the Defendants' satisfaction of their obligations and to enter an order reflecting both the modification of the Consent Judgment and his satisfaction thereof. In support of his motion, Defendants rely on the accompanying memorandum of law, with attached exhibits.

Defendants,
BEACON PRESS CORP. &
ANTHONY RITACCO,
By their Attorneys,

/s/ Raymond A. Marcaccio

Raymond A. Marcaccio, Esquire (#3569)
Julie P. Hamil, Esquire (#6887)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax
ram@om-rilaw.com

**CERTIFICATION**

I hereby certify that the foregoing *DEFENDANTS' MOTION TO AMEND CONSENT JUDGMENT AND FOR ENTRY OF ORDER THAT MODIFIED JUDGMENT HAS BEEN SATISFIED* was filed electronically with the United States District Court for the District of Rhode Island and is available for viewing and downloading from the Electronic Case Filing system. The following attorney received service by electronic means on this 21st day of December, 2006.

Douglas J. Emanuel, Esquire
demanuel@crfllp.com

/s/ Raymond A. Marcaccio

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ALL POINTS CAPITAL CORP.** | **:** | |
| | **:** | |
| **v.** | **:** | **C.A. No. 2005-305-ML** |
| | **:** | |
| **BEACON PRESS CORP.,** | **:** | |
| **and ANTHONY RITACCO** | **:** | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO AMEND CONSENT JUDGMENT AND FOR ENTRY OF ORDER THAT MODIFIED JUDGMENT HAS BEEN SATISFIED**

INTRODUCTION

Defendant, Anthony Ritacco, both individually and as President of Beacon Press Corp. (hereinafter "Ritacco"), moves this Honorable Court for the modification of the December 2, 2005 Amended Consent Judgment, pursuant to Fed.R.Civ.P. 60(b). The purpose for the modification is to have the court judgment conform to the parties' subsequent contractual modification of its terms.

After the Amended Consent Judgment was entered in this matter on December 2, 2005 (hereinafter, "Consent Judgment" or "Judgment"), the parties agreed to contractually modify its terms, which significantly increased the amount of monies that Plaintiff, All Points Capital Corp. ("APCC"), would receive within the year following the judgment. The Consent Judgment for $608,203.85 afforded Ritacco with seven years within which to make full payment. The modified agreement was for $475,000, and was fully paid within *seven months* of its execution. Despite having paid the entire amount in an accelerated time period, APCC has launched a wave of discovery against Ritacco in an effort to now force Ritacco to pay the original amount of the

Consent Judgment. This motion is thus necessary to have the Consent Judgment conform to the modified agreement and bring an end to this litigation.

PROCEDURAL and FACTUAL HISTORY

This dispute originates from an Equipment Financing Agreement entered on March 22, 2004, between APCC and Ritacco's company, Beacon Press Corp. The financing agreement was guaranteed by Ritacco. The financing was in the amount of $610,500 and was used for the purchase of a printing press, the Raghbeer Fast 300 ("Printing Press" or "Press").

APCC filed a Verified Complaint on July 11, 2005, alleging, *inter alia*, a breach of contract. On December 2, 2005, this Court entered an Amended Consent Judgment, the terms of which had been negotiated and agreed to by the parties. A copy of the Amended Consent Judgment is attached hereto as Exhibit A. The Consent Judgment imposed a lien in favor of APCC on Ritacco's residence located in Warwick, Rhode Island.[1] Ritacco was obligated to sell the Printing Press and give over the proceeds of the sale within 240 days from the date of the entry of the Consent Judgment. The parties were aware that the proceeds from the sale of the press would not be sufficient to cover the amount of the judgment. Consequently, the Consent Judgment called for periodic payments in varied amounts, which included:

> (c) In addition to the payments set forth in Paragraph 6(a) and 6(b), tender the sum of Six Thousand Five Hundred Dollars ($6,500) to APCC contemporaneously with the execution of this Consent Judgment, again on December 15, 2005, and then once a month, for the next six (6) months thereafter, upon the fifteenth day of each such month; and
>
> (d) At such time that all other payments required under this Paragraph 6 are made as provided herein, any remaining balance of the Judgment Amount shall be paid by Beacon and/or Tony [Ritacco] to APCC on a monthly basis, ***amortized over a seven-year repayment period***.

[1] Of note, the Consent Judgment did not require Ritacco to transfer any of the equity in his home to APCC in satisfaction of the Judgment.

*See*, Exhibit A, ¶ 6, sections (c) and (d) (emphasis provided). As shown above, the Judgment contemplated a seven-year repayment period.

Between the date of the entry of the Consent Judgment and early February 2006, Ritacco paid $24,500 to APCC in connection with the terms of the Consent Judgment.[2] Further, Ritacco's attorney, Joel Chase, apprised APCC's counsel, Chase, Ruttenberg and Freedman, of Ritacco's continued efforts to sell the Press. Indeed, in December 2005, Chase informed APCC's counsel that Ritacco had a buyer for the Press, for a purchase price of $250,000. APCC's counsel consented to its sale for that price on December 21, 2005. *See*, Exhibit B, attached hereto.

On February 10, 2006, Ritacco called a principal of APCC, Catherine Wilinski ("Wilinski"), in an effort to modify the terms of the Consent Judgment and accelerate the payment schedule, in return for a reduction in the total amount to be paid. Ritacco proposed to continue making payments on a monthly basis in the amount of $6,500 and promised to refinance his home and to tender all of the proceeds of the refinancing to APCC directly. *See* Exhibit C, attached hereto. APCC responded to Ritacco's letter on February 13, 2006, and noted that although Ritacco's February 10 letter "in general terms . . . reflect[s] our understanding, there are some specific terms which do not reflect our understanding or need to be clarified." *See* Exhibit D, attached hereto.

The February 13, 2006 reply letter went on to clarify those terms. Ritacco assented to and signed the letter. Pursuant to the terms of the revised agreement, Ritacco agreed to refinance his house and transfer the value of his equity to APCC. He also agreed to continued monthly payments until he completely satisfied payment of the newly stipulated amount. The February

---

[2] The payments were made on July 29, 2005 ($5,000), November 28, 2005 ($6,500), December 13, 2005 ($6,500) and January 11, 2006 ($6,500).

13, 2006 correspondence states: "[y]ou have confirmed your agreement to continue to make payments in accordance with our existing agreement, including the $6,500 payment due in February and the $100,000 payment due March 15, 2006, as well as all additional *scheduled monthly payments thereafter until such time as All Points received payment in full of the $475,000 stipulated amount (the "Stipulated Amount")*" (emphasis provided.)

In consideration of the accelerated payment, APCC agreed to reduce the repayment amount to $475,000. The modified agreement states that APCC would maintain its security interest in the Press until such time as Ritacco completed payment of the $475,000. In summary, Ritacco agreed to pay the value of his home equity to APCC, which totaled $349,209.28, instead of paying the proceeds of the Press to APCC, within 240 days. The $349,209.28 was actually wired on or before February 28, 2006, only two weeks following the February 13, 2006 modified agreement.

It is evident that Ritacco negotiated for the sale of the Press at the time the modified agreement was entered. He corresponded with Ken Ubert on February 10, 2006, (*see* Exhibit E, attached hereto) and obtained a written agreement to sell the Press on February 16, 2006. He shipped the Press to Wisconsin, to Ken Ubert on or about February 21, 2006. Ritacco agreed to sell the Press for $268,000, in return for a promissory note and payment schedule as follows:

> An initial payment of $10,000 with 60 subsequent monthly payments of $3,800, commencing on April 15, 2006; one payment of $5,000 due on June 1, 2006 (which has not been paid); and a balloon payment of $25,000 on or before February 15, 2011.

*See*, Exhibit F.

Ritacco was responsible for paying the finder's fee in the amount of $10,000, and for most of the transportation in the amount of $7,114.75. As of September 13, 2006, at which time Ritacco

completed his payments to APCC, Ritacco had received a total of $25,200 from the sale of the Press and has paid out $17,114.75 for the finder's fee and transportation/shipping costs.

The Modified Agreement has directly benefited APCC. Instead of receiving the sales proceeds from the Press, which would have been no more than $250,000 -- payable over a questionable payment period -- APCC gained the immediate cash from the refinancing of the Ritacco home: $349,209.28. One hundred percent of the refinancing went to APCC. Indeed, the proceeds were sent electronically from Ritacco's lender to APCC. Ritacco never had access those monies.

In addition to the transfer of the refinancing monies, Ritacco made payments to APCC as follows:

| | |
|---|---|
| 2/10/06: | $ 6,500.00 |
| 3/10/06: | $25,000.00 |
| 4/12/16: | $10,000.00 |
| 5/10/06: | $ 6,500.00 |
| 6/13/06: | $ 6,500.00 |
| 7/13/06: | $ 6,500.00 |
| 8/15/06: | $ 6,500.00 |
| 9/13/06: | $58,290.72* |
| | *To date, this final payment has not been cashed by APCC. |

The foregoing payments, in addition to the refinancing monies, total $475,000. Having paid APCC $475,000 over the course of a seven-month period, Ritacco has now fully satisfied the terms of the parties' modified agreement. In fact, Ritacco has paid APCC substantially more than $475,000 because he was making payments prior to the parties' renegotiation that were not credited towards the $475,000 figure.

Contrary to the suspicions of APCC, Ritacco did not sell the Press and obtain the purchase price. Instead, he has been forced to sell the Press at a significant discount and also to accept unattractive terms, including a 60-month payment schedule. Now that the modified

agreement has been paid in full -- within seven months of its execution -- APCC has commenced post-judgment discovery against him, in an attempt to satisfy the original $608,203.85 judgment. APCC has informed defense counsel that it is entitled to the full judgment since Ritacco sold the Press before he made the made the final payment on the modified agreement.

ARGUMENT

**1. Modification of the Amended Consent Judgment is Warranted Because the Parties Agreed to the Modified Terms**

A consent judgment is contractual in nature, although it retains all of the force and effect of a judicial decree. *See Rufo v. Inmates of the Suffolk County Jail et al.*, 502 U.S. 367, 378 (1992); *Office of Child Advocate v. Lindgren*, 296 F.Supp.2d 178, 184 (D.R.I. 2004). A court may modify a consent judgment upon such terms for any other "reason justifying relief from judgment." Fed.R.Civ.P. 60(b). A significant change in circumstances will warrant the modification of a consent judgment. *Rufo*, 502 U.S. at 383. In reviewing requests for modification of consent judgments, the First Circuit has adopted a flexible approach that considers the facts of the particular case in light of the equitable nature of Fed.R.Civ.P. 60(b) and the relief requested. *Lichine & Cie v. Sacha A. Lichine Estate Selections*, 45 F.3d 582, 585-86 (1st Cir. 1995). *See U.S. v. Kayser-Roth*, 917 F.Supp. 889, 892-93 (D.R.I. 1996) (applying *Lichine* standard). In particular, the First Circuit's flexible standard considers certain factors in reviewing a party's motion for modification of a consent decree, such as the circumstances leading to the decree, the hardship on the burdened party, duration of the burden and likelihood of the burden's continuation and the benefited party's need for continuation of the decree. *Lichine*, 45 F.3d at 586.

In the current case, the changed circumstances warranting modification of the Consent Judgment is the subsequent agreement of the parties to modify its terms. The subsequent

agreement constitutes a valid contract between the parties, with valuable consideration exchanged for the new terms. In particular, APCC received immediate and substantial payment in exchange for the reduction of the judgment amount. Indeed, the modification inured more to the benefit of APCC because in consideration for the reduction of the judgment amount, APCC received a substantially greater sum in connection with the refinancing than it would have received from the sale of the Press and in a shorter period of time. Where the Consent Judgment contemplated a seven-year repayment period, under the terms of the parties' subsequent agreement, Ritacco promised and delivered complete payment of $475,000 within *seven months* of the revised agreement. In exchange for the transfer of 100% of his home's equity to APCC, Ritacco received the benefit of a reduced judgment amount and achieved satisfaction of the judgment in a much shorter time frame than was contemplated by the Consent Judgment.

APCC acknowledges that the parties entered into a modification of the Consent Judgment. *See Plaintiff's Response in Opposition to Defendant's Motion for a Protective Order*, at 1, attached hereto as Exhibit G. The terms of that modification are clearly spelled out in the correspondence APCC sent to Ritacco on February 13, 2006, which Ritacco acknowledged by signing.

Ritacco seeks the modification of the original Consent Judgment in conformance with the terms of the parties' subsequent agreement because this agreement constitutes a change in circumstances warranting such action. Because consent judgments carry all the force and effect of judicial decrees, without such modification, the original Consent Judgment would remain enforceable by APCC, despite Ritacco's satisfaction of the subsequently changed terms. Principles of fairness and equity, which are at the heart of the court's power to modify consent

judgments, dictate the modification at issue here. *See Thompson v. U.S. Department of Housing & Urban Development*, 404 F.3d 821, 830 (4th Cir. 2005).

> The hallmark of equity, of course, is its flexibility: [t]he essence of a court's equity power lies in its inherent capacity to adjust remedies in a feasible and practical way… Equitable remedies must be flexible if these underlying principles are to be enforced with fairness and precision.

*Thompson*, 404 F.3d at 830.

Although the situation of the parties has markedly changed, warranting a modification of the consent decree, the current case does not easily lend itself to the First Circuit's *Lichine* analysis. The *Lichine* approach contemplates a situation wherein one party seeks prospective relief from a consent judgment and assumes that the parties' have not come to a meeting of the minds with respect to the amended terms. Here, we have a situation wherein the parties subsequently agreed to amend the terms of the consent judgment and the Defendant refinanced his home in reliance thereon, and now seeks judicial recognition of this agreement. Further, the Defendant asserts that he has satisfied the terms of the amended agreement, thus eliminating the need for prospective application of the consent judgment. For these reasons, the broader approach outlined in *Rufo* is a more appropriate analytical tool in this circumstance.

Because this Court retains broad equitable powers to modify a consent judgment and because the parties' conduct establishes a significant change in circumstances, modification of the consent judgment in conformity with the terms of the parties' subsequent agreement is warranted.

**2. <u>Defendants Anticipate that Plaintiff Will Challenge the Modification of the Consent Judgment</u>**

As stated previously, Ritacco has fully complied with the terms of the parties' modified agreement, having paid APCC $475,000 in satisfaction thereof. Because APCC cannot

challenge Ritacco's compliance with this focal term of the modified agreement, APCC has already asserted several challenges to the validity of the modified agreement in an attempt to circumvent its contractual obligations.

In *Plaintiff's Response in Opposition to Defendant's Motion for a Protective Order*, Plaintiff asserted the following:

> During the parties' discussions as to whether Ritacco had satisfied his obligation, All Points learned that (a) it and Ritacco disagreed on the terms of the modification; and (b) Ritacco had, at some time, apparently transferred the Printing Press in which All Points had and has a perfected security interest, and did not notify All Point, in breach of the Amended Consent Judgment.

*See Plaintiff's Response in Opposition to Defendant's Motion for a Protective Order*, at 2. APCC also asserts that because Ritacco did not make complete payment of the $475,000 at the time that he refinanced his house, Ritacco effectively breached the terms of the modified agreement. *See Plaintiff's Response*, at 2. We address each of these contentions in turn.

<u>Sale of the Raghbeer Fast 300</u>

Ritacco anticipates that because he sold the Printing Press prior to his full satisfaction of the terms of the modified agreement, APCC will claim a material breach of the parties' amended agreement. Defendant acknowledges that he agreed to sell the Printing Press during the period when he was making his final payments to APCC, however, Ritacco at all times made timely payments to APCC in connection with the modified agreement and ultimately fulfilled his obligations. APCC had no reason to invoke its rights in the collateral and thus suffered no damage as a result of Ritacco selling the Press.

A security interest is an interest in personal property *which secures payment or performance of an obligation*. See R.I. Gen. Laws § 6A-1-201(37). A secured party's rights and remedies in connection with a secured interest arise from a debtor's default on his underlying

obligations. See R.I. Gen. Laws § 6A-9-601 *et seq*. In this unique instance, Defendant complied with the terms of the parties' agreement, thereby giving the Plaintiff no reason to institute enforcement proceedings in connection with its secured interest. By APCC's own statement, its security interest only lasted until complete satisfaction of the amended agreement was achieved, which did occur. Because Ritacco never defaulted on his payment obligations, APCC was never forced to institute enforcement proceedings on the collateral. For this reason, any breach that may have been caused by Ritacco's sale of the Press was immaterial at best.

No Material Breach Has Occurred

Notwithstanding APCC's position that none of the foregoing constitutes a breach of the parties' agreement, even if they are so construed, none of these incidents rise to the level of a material breach warranting rescission of the agreement. "A material breach occurs when there is a breach of an essential feature of a contract, and must defeat the parties' object in making it." 17 Am.Jur.2d Contracts § 706.

APCC cannot substantiate any claim for damages associated with the alleged breaches at issue here. Likewise, none of the alleged infractions is so material as to affect the central bargain of the amended agreement: prompt payment of $475,000. Ritacco paid APCC the entire $475,000 contract price within seven months of finalizing the terms of the amended agreement, far sooner than the seven-year repayment period contemplated under the Consent Judgment.

It is a well-settled principle of contract law that any damages award must be aimed at placing the allegedly injured party in as good of a position as if the allegedly breaching party had not caused the breach. *See Independent Financial Services, Inc. v. CCI Group,* Inc., 2006 WL 3013184, at 6. Here, not only has APCC not suffered any damages, but in fact APCC is in a *better* position than it was when the parties' entered into the modified agreement. APCC can

claim no damages that warrant a finding of a breach when Plaintiff has realized the ultimate goal of the agreement, namely, the prompt payment of $475,000. Whatever infractions APCC alleges in connection with Ritacco's performance of his obligations under the new agreement, none of them rose to the level of materiality necessary to justify a finding of material breach.

CONCLUSION

For all of the foregoing reasons, Defendants respectfully request this Honorable Court to modify the Consent Judgment to conform to the terms of the parties' subsequent agreement and to enter an order acknowledging that Defendants has satisfied his obligations.

Defendants,
BEACON PRESS CORP. &
ANTHONY RITACCO,
By their Attorneys,

/s/ Raymond A. Marcaccio

Raymond A. Marcaccio, Esquire (#3569)
Julie P. Hamil, Esquire (#6887)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax
ram@om-rilaw.com

**CERTIFICATION**

I hereby certify that the foregoing *DEFENDANTS'MEMORANDUM OF LAW IN SUPPORT OF MOTION TO AMEND CONSENT JUDGMENT AND FOR ENTRY OF ORDER THAT MODIFIED JUDGMENT HAS BEEN SATISFIED* was filed electronically with the United States District Court for the District of Rhode Island and is available for viewing and

downloading from the Electronic Case Filing system. The following attorney received service by electronic means on this 21st day of December, 2006.

Douglas J. Emanuel, Esquire
demanuel@crfllp.com

/s/ Raymond A. Marcaccio