***UNITED STATES DISTRICT COURT***
***DISTRICT OF RHODE ISLAND***

| | | |
|---|---|---|
| ALL POINTS CAPITAL CORP. | : | |
| | : | |
| -V- | : | Civil Action No. 05-305-ML |
| | : | |
| BEACON PRESS CORP.,<br>ANTHONY RITACCO,<br>and MARY RITACCO | :<br>:<br>: | |

***PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO AMEND CONSENT JUDGMENT***

Now comes plaintiff All Points Capital Corp., and objects to the defendants' Motion to Amend Consent Judgment and request for an order that the judgment has been satisfied. In support of the objection, All Points Capital Corp. submits herewith a memorandum of law and affidavit.

WHEREFORE, Plaintiff requests that Defendants' motion be denied.

ALL POINTS CAPITAL CORP.
By its attorneys,

/s/ Robert D. Fine
/s/ Douglas J. Emanuel

Robert D. Fine (2447)
Douglas J. Emanuel (5176)
CHACE RUTTENBERG & FREEDMAN, LLP
One Park Row, Suite 300
Providence, RI 02903
Tel.: (401) 453-6400
Fax: (401) 453-6411
Email: demanuel@crfllp.com

Dated: January 5, 2007

***CERTIFICATE OF SERVICE***

I hereby certify that the foregoing Objection of Plaintiff to Defendant's Motion to Amend Consent Judgment, as well as the memorandum and affidavit in support thereof, was filed electronically with the United States District Court for the District of Rhode Island and is available for viewing and downloading from the Electronic Case Filing system. The following attorney received service by electronic means on this 5th day of January, 2007.

Raymond A. Marcaccio, Esq.
ram@om-rilaw.com

/s/ Douglas J. Emanuel

***UNITED STATES DISTRICT COURT***
***DISTRICT OF RHODE ISLAND***

| | | |
|---|---|---|
| ALL POINTS CAPITAL CORP. | : | |
| | : | |
| -V- | : | Civil Action No. 05-305-ML |
| | : | |
| BEACON PRESS CORP., | : | |
| ANTHONY RITACCO, | : | |
| and MARY RITACCO | : | |

***MEMORANDUM OF LAW OF PLAINTIFF ALL POINTS CAPITAL CORP. IN SUPPORT OF ITS OBJECTION TO DEFENDANTS' MOTION TO AMEND CONSENT JUDGMENT***

"He who seeks equity must do equity." *Raposa v. Guay,* 125 A.2d 113, 115 (R.I. 1956).

"Those who seek equity must come before the court with 'clean hands.'" *K-Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d 907, 912 (1st Cir. 1989).

Anthony Ritacco ("Ritacco"), who comes to this Court seeking a modification to a Consent Judgment – an equitable remedy – has not "done equity," and comes before this Court with the most unclean of hands. His request for a modification should be denied.

***BACKGROUND***

Beacon Press Corp. ("Beacon") and its principal, Ritacco, borrowed $610,000 from the predecessor in interest to All Points Capital Corp. ("All Points") to purchase a Raghbeer Fast 300 printing press. When Beacon and Ritacco failed to honor their obligation to make payments under the financing agreement between and among them and All Points, All Points sued Ritacco, his wife Mary ("Mary"), and Beacon. Mary was named as a defendant as a result of Ritacco's fraudulent conveyance of his interest in his home to Mary.

In December, 2005, All Points, Beacon, Ritacco and Mary entered into an Amended Consent Judgment in the amount of Six Hundred Eight Thousand Two Hundred Three Dollars and Eighty-Five Cents ($608,203.85). In addition to Mary transferring to Ritacco his former interest in

his house, and after a small partial payment made at the execution of the Consent Judgment, the Consent Judgment had continuing obligations on Beacon and Ritacco. They were to:

> a. tender the sum of One Hundred Thousand Dollars ($100,000) to APCC, within ninety days of the date of entry of this Consent Judgment; and
>
> b. in addition to the payment set forth in Paragraph 6(a), tender the proceeds of the sale of the Raghbeer Fast 300 printing press, which serves as APCC's security for Beacon and Tony's underlying debt to APCC, within 240 days of the date of entry of this Consent Judgment (which sale must be previously approved by APCC, which consent will not be unreasonably withheld); and
>
> c. in addition to the payments set forth in Paragraph 6(a) and 6(b), tender the sum of Six Thousand Five Hundred Dollars ($6,500) to APCC contemporaneously with the execution of this Consent Judgment, again on December 15, 2005, and then once a month, for the next six (6) months thereafter, upon the fifteenth day of each such month.

*Amended Consent Judgment,* December 2, 2005, ¶ 6.[1]

Just ten weeks later, Ritacco wrote to All Points and asked for a modification of the Consent Judgment. *Deposition of Anthony Ritacco ("Ritacco Depo."),* December 7, 2006, at 20/1-5.[2] Ritacco wrote:

> "I am starting the process to refinance my house. When the refinancing is completed, I will pay All Points an amount equivalent to $475,000 minus all payments made to date under our previous agreement.
>
> ….
>
> It is also my understanding that, based upon this revised agreement, All Points no longer has an interest in the Fast 300."

*Defendants' Memorandum in Support of Their Motion to Amend,* Exhibit C (correspondence from Ritacco to All Points dated February 10, 2006).

---

[1] Contrary to the allegations contained in footnote 1 of the defendants' memorandum, an execution was recorded against Ritacco's real estate following the entry of the Amended Consent Judgment. *Amended Consent Judgment,* December 2, 2005, ¶ 5.

[2] All references to Ritacco's deposition, a copy of which is attached as "Exhibit 1," are in the form of *Ritacco Depo.,* at page/line]."

All Points responded to Ritacco's proposal by telling him that in order to obtain the reduction he sought, he would have to pay $475,000 over and above what he had already paid, crediting towards the $475,000 only those payments made "after confirmation by both parties of the revised agreement." *Defendants' Memorandum in Support of Their Motion to Amend,* Exhibit D (correspondence from All Points to Ritacco dated February 13, 2006). All Points further noted that "until such a time as All Points has received the [$475,000] in full, it shall continue to maintain its interest in the Fast 300, and shall not waive any other rights or remedies as it may have under contract or at law." *Id.*

## *ARGUMENT*

The defendants are not entitled to relief under Rule 60(b)(5) of the Federal Rules of Civil Procedure.

### *A. Ritacco has not done equity, and has unclean hands.*

Ritacco is not entitled to equitable relief of any sort. His conduct with All Points is not much more than a series of "bait-and-switch" maneuvering, demonstrated by nondisclosures and outright misrepresentations to All Points and to others. His inequitable conduct and unclean hands require the enforcement of the Amended Consent Judgment as entered by this Court.

Even before Ritacco's February 10 letter, in which he first proposed a reduction of his obligation to $475,000, he was in negotiations with Ken Ubert to sell the Fast 300 printing press, which press was then fully secured by All Points. *Ritacco Depo.,* at 58/9-11. In fact, when he wrote the February 10 letter, Ritacco *knew* he wasn't going to be able to get $475,000 to pay to All Points from the completion of the refinancing of his house. *Ritacco Depo.,* at 34/13.

On February 10, 2006 – the same day he requested the modification from All Points – his lawyer forwarded a purchase and sale agreement to Ubert. *Ritacco Depo.,* at 39/17 – 40/5.[3]

[3] A copy of this letter agreement is attached as "Exhibit 2."

In that purchase and sale agreement, Ritacco, through his counsel, warranted that "there are no liens or encumbrances on the machinery." *Ritacco Depo.,* at 36/13-22. Yet Ritacco knew that All Points had a lien on the press, *Ritacco Depo.,* at 61/14-21, and as of February 13, knew that All Points was not giving up its lien on the press until the refinancing of Ritacco's house was completed, at which time All Points was to receive $475,000 (minus any payments made after February 13). *Defendants' Memorandum in Support of Their Motion to Amend,* Exhibit D (correspondence from All Points to Ritacco dated February 13, 2006). Ritacco knew that All Points's lien meant that All Points owned the press until Ritacco paid All Points what it was owed. *Ritacco Depo.,* at 35/9-10.

Ritacco did not pay $475,000 when the refinancing of his house was completed. He paid just under $350,000 on February 28, 2006. *Ritacco Depo.,* at 66/2-3. He knew that this would be the only disbursement from the refinancing, and that with this payment, the refinancing was "completed." *Ritacco Depo.,* at 23/6-7.

On March 14, 2006, *one month* after learning that All Points was maintaining its secured interest in the press until the $475,000 was paid, Ritacco (through counsel) wrote to Ubert, not only confirming but *reconfirming* "the subject machinery you have purchased is free of all liens and encumbrances, *including those associated with All Points Capital.*" *Ritacco Depo.,* at 60/8 – 61/21 (emphasis added).[4]

On March 15, 2006, he sold the press to Ubert. *Defendants' Memorandum in Support of Their Motion to Amend,* Exhibit F (promissory note from Ubert to Ritacco). The press was in Wisconsin as early as March or April, 2006, *Ritacco Depo.,* at 46/24[5], notwithstanding the fact that *even under Ritacco's*

[4] A copy of this correspondence is attached as "Exhibit 3."

[5] Notwithstanding his testimony under oath, this date is apparently continuing to move earlier in time. *Defendants' Memorandum in Support of Their Motion to Amend,* at 4 (Ritacco "shipped the press to Ken Ubert on February 21, 2006."). Significantly, this means that Ritacco shipped the press to Wisconsin out from under the security interest of All Points *even prior to receiving any payment for it.*

*own version of his obligations,* All Points still maintained a secured interest in the press. *Ritacco Depo.,* at 61/14-21.

In addition, Ritacco never corrected his misrepresentation to Ubert that the press was free and clear of liens, thus allowing his known false warranty to linger uncorrected. *Ritacco Depo.,* at 50/19-24.

Further, when asked, Ritacco testified that he would have disclosed information concerning the whereabouts of the press if All Points had ever asked:

> Q. They had a secured interest in the machine?
> A. They did, but they never once asked me where the press was or ever wanted to look at it, wanted to know if it was ever insured.
> Q. And if they did ask those questions, would you have answered them?
> A. Of course. It was right there. They never came and looked at it. Their main concern was, all they said to me was we're not interested in the press, Mr. Ritacco, we're interested in the money.

*Ritacco Depo.,* at 40/21 – 41/6. Yet when All Points actually did request information from Ritacco about the press, he took calculated measures to avoid telling All Points that he sold the press months earlier, and that it was in Wisconsin:

> Q. Mr. Ritacco, have you seen this letter that's addressed to you that is in front of you as Exhibit 6?
> A. Okay, I don't recall it, but I must have seen it.
> Q. If you turn to the last paragraph before Miss Wilinski's signature --
> A. Okay.
> Q. It asks for full written disclosure within five days of the location and the press, excuse me, of the press, and immediate access for inspection and/or possible removal, if warranted, to a safe and secure location for remarketing. Do you see that?
> A. Yes.
> Q. Did you ever answer that request?
> A. No.

*Ritacco Depo.,* at 41/13 – 42/4. Notwithstanding his testimony minutes earlier that he "of course" would have answered questions about the location of the press, he never responded to the September 5 inquiry from All Points:

> Q. … So, here's a request on September 5th for written disclosure of the location of the press and access for inspection, which a few minutes ago, you testified if they asked, you would tell them.
>
> MR. MARCACCIO: There's no question. All you have to say is yes or no. He's going to ask you a question.
>
> Q. So here they asked?
> A. Yup.
> Q. Did you ever tell them?
>
> MR. MARCACCIO: Objection. Asked and answered. You may answer again.
>
> A. No.

*Ritacco Depo.,* at 42/12 – 43/6.

Moreover, All Points's February 13 letter required Ritacco to provide "a copy of the written commitment from the financial institution providing the refinancing." *Defendants' Memorandum in Support of Their Motion to Amend,* Exhibit D (correspondence from All Points to Ritacco dated February 13, 2006). He didn't. *Ritacco Depo.,* at 39/16.

Ritacco signed a lease obligating himself to make payments to his original lender.

He didn't make the payments.

He told Ubert that the press was "free and clear."

He knew that it wasn't.

He promised to pay All Points $475,000 "when the refinancing is completed."

He didn't, and he knew he wasn't getting $475,000 out of the refinancing when he made the original offer.

He simultaneously requested a reduction in his obligation to All Points out of one corner of his mouth, when the other corner was negotiating a sale of the press and the retention of its profits, notwithstanding All Points's secured interest.

Ritacco's conduct and testimony makes one thing perfectly clear: he will say or do anything if it results in his gaining an advantage, regardless of the truth.

But equity does not and cannot condone that. Equity would abhor the modification of the Amended Consent Judgment at Ritacco's request.

### *B. Ritacco's reading of the February 13 letter is tortured and illogical.*

In yet another effort to mislead, Ritacco proffers to this Court that language in All Points's February 13 letter suggests that Ritacco could unilaterally extend his time to pay the $475,000 beyond the completion of the refinancing – a time limit he set in his own February 10 letter.

Such a reading is tortured, and illogical, and is just the latest in Ritacco's efforts to say anything to anyone to achieve a more favorable result.

Ritacco knows that All Points had no idea when the refinancing would occur. *Ritacco Depo.,* at 30/3-5. All Points knew only that Ritacco was "starting the process to refinance [his] house," and that All Points would receive $475,000 "when the refinancing [was] completed." *Defendants' Memorandum in Support of Their Motion to Amend,* Exhibit C (correspondence from Ritacco to All Points dated February 10, 2006).

Thus, All Points wrote back to Ritacco and told him that any payment between the time he agreed to the terms of the February 13 letter and the time he paid the $475,000 at the completion of the refinancing of his house could count towards the reduced obligation of $475,000. *Defendants' Memorandum in Support of Their Motion to Amend,* Exhibit D (correspondence from All Points to Ritacco dated February 13, 2006).

Despite Ritacco's revisionist history, the February 13 letter does not suggest that one of the terms of Ritacco's February 10 letter was being changed was the *timing* of the payment of the $475,000. *Compare Defendants' Memorandum in Support of Their Motion to Amend,* Exhibit C (correspondence from Ritacco to All Points dated February 10, 2006) *with Defendants' Memorandum in Support of Their Motion to Amend,* Exhibit D (correspondence from All Points to Ritacco dated February 13, 2006). This payment had been promised and expected "when the refinancing is completed" since the time Ritacco (or his counsel) put those very words in Ritacco's own letter. *Ritacco Depo.,* at 21/21-23.

***C. Absent a meeting of the minds, the February "modification" is a nullity.***

Ritacco's revisionist history suggests that he thinks the February 13 letter allowed him to ignore, unilaterally, his own deadline for the payment of the $475,000.

All Points vehemently disputes this interpretation. *Affidavit of Anthony Perettine ("Perettine Aff."),* January 4, 2007, at ¶¶ 3-6.

If there truly was no meeting of the minds on this element of the proposed modification to the Amended Consent Judgment, then the proposed modification is a nullity, and the Amended Consent Judgment remains intact. *Opella v. Opella,* 896 A.2d 714, 720 (R.I. 2006) ("For either an express or implied contract, a litigant must prove mutual assent or a meeting of the minds between the parties.") (internal citations omitted).

***D. Ritacco misstates even the most fundamental premise of his own proposal.***

In his memorandum filed with this Court, Ritacco proffers that under his February 10 letter, as modified by the February 13 response, "Ritacco agreed to refinance his house and transfer the value of his equity to [All Points]. *Defendants' Memorandum in Support of Their Motion to Amend,* at 3. This is yet another shining example of Ritacco's revisionist history.

Ritacco agreed to pay $475,000 when the refinancing of his house was completed.

Nothing more, nothing less. And certainly nothing about "transferring the value of his equity."[6]

He promised $475,000 when the refinancing was complete, and failed to deliver yet again.

***E. Rule 60 neither requires nor justifies the relief Ritacco requests.***

Pursuant to Rule 60(b)(5), the Court may relieve a party from a final judgment if the judgment has been satisfied. Defendants' plea that the judgment should be modified – and then deemed satisfied – does not entitle them to the relief sought.

Defendants failed to abide by their proposed compromise to the judgment and they are not entitled to yet another bite at the apple. Defendants' obligations under the Amended Consent Judgment obligated Defendants to do certain things, which they failed to do. "Modification is not justified when a decree simply becomes inconvenient for a party." *United States v. Kayser-Roth Corp.*, 917 F.Supp. 889, 892 (D.R.I. 1996) (denying motion to modify judgment).

Notably, under Section 6(b) of the consent judgment, Defendants were required to seek the approval of All Points of the sale of the press. Although All Points advised defendants that it would approve a sale of the press at a price of $250,000, there was no indication from any of the defendants that they were considering getting payment in that amount over time. *Perettine Aff.,* ¶¶ 7-8. In fact, that knowledge would likely have led to a different response from All Points. *Perettine Aff.,* ¶ 9. Not only did the Defendant fail to get All Points's approval of a sale that resulted in payments over five years, the Defendants failed to *disclose* to All Points of the sale that appears to have already been finalized *the very day* Ritacco asked for a modification of the terms of the Amended Consent Judgment he had signed just ten weeks earlier.

Moreover, the sale of the press, and turnover of proceeds therefrom by the defendants to All Points, was *required* by the Amended Consent Judgment. The proceeds from the sale of the press

[6] Ritacco's stretching of the truth is not limited to this one instance either. The "wave of discovery" All Points "launched," *Defendants' Memorandum in Support of Their Motion to Amend*, at 1, was exactly *one* Notice of Deposition.

determined only how much of the original $608,000 for which Ritacco had to pay from other sources. No sale would reduce the total amount Ritacco agreed to pay All Points – $608,000.

Ritacco did not abide by the terms of the letter agreement of February 13, 2006 when he failed to pay the $475,000 to All Points upon the completion of the refinancing of his real estate. Instead, he unilaterally determined that he would be able to pay over an extended period, without interest. He also unilaterally determined that he could sell the press out from under All Points's security interest – which he knew was valid – without consequence. He ignored requests from All Points as to information regarding the location of the printing press. Most important, Ritacco did not seek All Points's approval of the sale of the printing press on the actual terms of the sale, which terms would have factored into All Points's willingness to take a lump sum substantial discount over what Ritacco consented to pay to All Points under the Amended Consent Judgment. *Perettine Aff.*, ¶ 10.

This series of breaches, and Ritacco's failure to satisfy the terms of either the Amended Consent Judgment or the letter agreement of February 13, 2006, does not entitle Defendants to the relief they now seek. "We apply Rule 60(b)(5) having in mind that we are dealing with a decree arising from a commercial dispute and based on a bargain voluntarily entered into by businessmen represented by lawyers. Such a decree is shielded from facile modification by a rather formidable carapace." *Alexis Lachine and Cie v. Sacha A. Lachine Estate Selections, Ltd.*, 45 F.3d 582, 586 (1st Cir. 1995).

## *CONCLUSION*

Ritacco's conduct in deceiving All Points through misrepresentation, "bait-and-switch" tactics and half-truths must come to an end. He has breached every obligation he has made to All Points, including those entered as Orders of this Court. He sold the Fast 300 press *knowing* it was

secured by All Points, and made repeated misrepresentations to the buyer that was free from any such encumbrances, "specifically those associated with All Points Capital Corp."

"He who seeks equity must do equity." *Raposa v. Guay,* 125 A.2d 113, 115 (R.I. 1956).

"Those who seek equity must come before the court with 'clean hands.'" *K-Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d 907, 912 (1st Cir.1989).

Ritacco comes to this Court seeking a modification to a Consent Judgment – an equitable remedy – but he has not "done equity," and has most unclean hands. His request for a modification should be denied.

ALL POINTS CAPITAL CORP.
By its attorneys,

/s/ Robert D.Fine
/s/ Douglas J. Emanuel

Robert D. Fine (2447)
Douglas J. Emanuel (5176)
CHACE RUTTENBERG & FREEDMAN, LLP
One Park Row, Suite 300
Providence, RI 02903
Tel.: (401) 453-6400
Fax: (401) 453-6411
Email: demanuel@crfllp.com

Dated: January 5, 2007